IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JODY MATTHEWS                                                                                          PLAINTIFF

v.                                       4:25-cv-00102-JM-JJV

FRANK BISIGNANO,
Commissioner,
Social Security Administration,                                                              DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody Jr. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations. A copy must be served on the opposing party. The district judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, Jody Matthews, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits. Plaintiff's claim was initially denied but the matter was remanded by the Appeals Council for further consideration of the evidence. (Tr. 110, 227-229.) After remand, the Administrative Law Judge (ALJ) again concluded Plaintiff had not been under a disability within the meaning of the Social Security Act, because jobs existed in significant numbers she could perform despite her impairments. (Tr. 25-37.) From this decision, Plaintiff appeals.

This review function is extremely limited. A court's function on review is to determine

whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute.  Therefore, they will not be repeated in this opinion except as necessary.  After careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff is fifty-five years old. (Tr. 120.)  She earned two associate degrees, one in art and one in science, and is a veteran of the United States Army.  (Tr. 121.)   She has no past relevant work.  (Tr. 36.)

The ALJ[1] found Ms. Matthews has not engaged in substantial gainful activity since the

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

period from her alleged onset date of December 20, 2011, through the date she was last insured on March 31, 2016.[2]  (Tr. 27.)   During this timeframe, the ALJ found she had "severe" impairments in the form of "degenerative joint disease, multilevel degenerative disc disease, mixed hearing loss in the right ear and mild sensorineural hearing loss in the left ear, depressive disorder, posttraumatic stress disorder, anxiety disorder, personality disorder, alcohol use disorder, and obesity." (Tr. 27-28.)  With the aid of medical expert, Jeffery N. Andert, Ph.D., (Tr. 113-120), the ALJ further found Ms. Matthews did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  (Tr. 28-30.)

The ALJ determined Ms. Matthews had the residual functional capacity (RFC) to perform a reduced range of light work.  (Tr. 30.)  Because Ms. Matthews had no past relevant work and she had "severe" nonexertional impairments, the ALJ utilized the services of a vocational expert to determine if jobs existed that Plaintiff could perform despite her impairments.  (Tr. 133-136.)  Based in part on the testimony of the vocational expert, the ALJ determined Plaintiff could perform the job of housekeeper.  (Tr. 36-37.)  Accordingly, the ALJ determined Ms. Matthews was not disabled.  (Tr. 37.)

After the initial remand, the Appeals Council received additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner.  (Tr. 16-20.)  Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 1.)

---

[2] Accordingly, the question is whether Plaintiff was under a disability within the meaning of the Social Security Act from December 31, 2010, through the date last insured, March 31, 2016.  (Tr. 165.)
[3] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

3

In support of her Complaint, Plaintiff's sole argument is that the ALJ incorrectly evaluated her subjective symptoms. (Doc. No. 9 at 9-16) The ALJ analyzed Ms. Matthews' symptoms considering Social Security Ruling 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which states:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original); (Tr. 30).

After careful review, I find the ALJ fairly evaluated Ms. Matthews' subjective complaints. (Tr. 30-36.) In doing so, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the overall record explained in this decision.

(Tr. 31.)

Plaintiff might feel the ALJ has provided boilerplate language that has little meaning or value. However, the ALJ fully considered the voluminous medical records in this matter and his

4

conclusions are fully supported by the objective medical evidence. The ALJ stated:

> The allegations of totally disabling limitations are not supported by, or consistent with, the overall record outlined herein. Overall, the claimant was treated conservatively. By conservative means, she was prescribed medication, referred for physical therapy, participated in outpatient therapy, and was fitted for orthotics and hearing aids (Ex. 1F, 2F, 3F, 4F, 5F, 6F). Claimant testified that she declined to pursue knee surgery. Additionally, the record reflected signs of improvement in her conditions. As of November 2016, she reported successfully managing her knee problems with ointment and a brace (Ex. 3F, 6F). The record also indicates that the claimant reported a desire to return to full-time employment and she took advantage of vocational rehabilitative programs provided by the VA CWT program in housekeeping (Ex. 3F). She had good progress noted in her treatment notes with improved coping skills use and independent living. She also reported by December 2016 that she was able to function during the day without distress while she was in outpatient therapy. She also noted getting five to seven hours of sleep per night and able to process her life options (Ex. 6F). Further, the medical evidence in the record did not fully support a finding of disability. Although an MRI of her right knee revealed a subtle anterior [t]orn medial meniscal tear with a small, flipped fragment and parameniscal cyst (Ex. 9F). Included in the record are hinged-knee orthotics to help relieve knee pain. X-rays from 2014 showed mild degenerative changes of the patellofemoral compartment on the right and minimal patellar spurring on the left. While x-rays from February 2016 showed interval worsening of moderate to severe degenerative changes at the C5-C6 level, as compared to August 2013 findings, no further clinical signs indicated worsening conditions (Ex. 3F). At her heaviest alcohol abuse, she reported drinking a fifth of alcohol per day. She reported two drinking under the influence convictions in 2004 and 2009. As of November 2016, she last had alcohol in August 2016 (Ex. 3F). The record indicates that she had a diagnosis of alcohol abuse. However, throughout 2014 to 2016, she reported no alcohol consumption (Ex. 5F, 6F). Claimant elsewhere indicated a longest six-month period of sobriety when abstaining in hopes of being a kidney donor. (Ex. 3F/173). Importantly, the longitudinal record mental status examinations in the treating record are consistent with some moderate, but nondisabling, mental limitations. The claimant's activities of daily living and adaptive functioning from did not support a finding of disability. The claimant was treated for PTSD and the treatment notes indicate that she often times did not apply her learned coping skills to situations (Ex. 5F). She reported that she did not pay attention for very long, but usually finished what she started. She reported only sometimes having problems following instructions, but no real difficulty. She reported that her niece helped her with driving, preparing meals, and chores, but nothing in the record suggests that she was unable to prepare her own simple meals or tend to light household chores. She reported having pain with lifting above her head and caring for her hair, but otherwise, she was independent in her personal care matters. She also was able to shop for herself and her needs, but gave her niece her money to pay her bills (Ex. 7E). This overall record supports the conclusion claimant could perform a modified range of unskilled work activity.

(Tr. 32-33.)

The ALJ provided a thorough analysis here.  The ALJ specifically stated his reasons for discounting Plaintiff's subjective symptoms.  His conclusions here are supported by substantial evidence.  Accordingly, I find no error in the ALJ's thoughtful decision.

Plaintiff also argues that the ALJ unfairly characterized her testimony regarding declining to undergo knee surgery. (Doc. No. 9 at 11.)  While I agree Plaintiff did not testify that she declined to have surgery, the treatment notes fully support the ALJ's conclusion on this point.  Karen S. Seale, M.D., reported, "The very mention of the word 'surgery' resulted in the patient's immediate physical distancing of herself from me with firm and raised voice that she had no idea she was here to see a surgeon. . . She absolutely declared she has no interested in being 'cut on.'" (Tr. 1454.)  Dr. Seale added, ""As she left the exam room, she declared again that she wants nothing to do with surgery, but I gave her my contact information in the event that she changed her mind and wanted to discuss it again." (*Id.*)

Plaintiff further argues that the ALJ "made no mention of the Plaintiff's sworn testimony about her ability to walk," stand, or sit. (Doc. No. 9 at 12-13.)  But the medical evidence wholly fails to support severe limitations in walking, standing, or sitting.   Plaintiff offers no medical evidence to support these claims, and, upon close review of the file, I find very little.  As the Commissioner aptly argues:

> Here, the ALJ offered several reasons why Plaintiff's subjective statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence as a whole (Tr. 32–33). Plaintiff alleged disability due to a variety of mental and physical impairments, including knee pain that significantly limited her ability walk and stand (Tr. 128–29, 581). But as the ALJ observed, Plaintiff received only conservative treatment for those impairments, consisting of medication, a limited course of physical therapy, orthotics (such as a knee brace), hearing aids, and psychotherapy (Tr. 32, 124, 758, 1369, 1371, 1411, 1422, 5217). Plaintiff also declined to undergo knee surgery (Tr. 124–25, 1454). It

6

was reasonable for the ALJ to believe that Plaintiff would have received more aggressive forms of treatment if she truly had disabling symptoms.

(Doc. No. 11 at 5-6.)

I recognize that Plaintiff does suffer from some degree of physical and mental limitation. But the ALJ's conclusion that Plaintiff can perform a limited range of light work activities is supported by substantial evidence of record.

Plaintiff's testimony was largely that her mental issues keep her from engaging in the work force. She testified her job ended in 2017 because she could not get along with her supervisor. (Tr. 122.) And she said believed her anxiety being around people largely "interfered with [her] ability to work." (Tr. 123.) This also impacted her activities of daily living. (Tr. 125.) When asked what problems prevented Plaintiff from getting outside to "push a mower or rake leaves, things of that nature," Plaintiff testified, "Nothing really. It's just that I just didn't do it, you know. I used to do it. I guess, I just stopped, you know." (Tr. 125.) Plaintiff further testified it was her anxiety that kept her from being able to do chores and housework. (Tr. 126.) The ALJ fairly accounted for these limitations when determining Plaintiff could perform work "limited to simple, routine, repetitive task jobs with supervision that is simple, direct, and concrete with no interaction with the general public required." (Tr. 171.)

Given this limited review, second-guessing an ALJ's assessment of subjective symptoms is an agonizing task. And being mindful of the "substantial evidence" test in these cases, the record contains adequate objective medical evidence to support the ALJ's determination here.

In this case, the record contains ample medical records to support the ALJ's decision. Plaintiff is reminded she had the burden of proving her disability. *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988). Thus, she bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Plaintiff has simply not met that

burden.

Ms. Matthews' counsel has done an admirable job advocating for her rights. But it is not the task of a court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, RECOMMENDED that the final decision of the Commissioner be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

DATED this 14th day of July 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE